Welch, Administrator, *v.* McClintock.

CHARLES A. WELCH, Administrator, *vs.* JOHN McCLINTOCK.

By a charter party of a vessel for a voyage from New York to Charleston, and thence to Liverpool, the master and partowner agreed to victual and man the vessel and keep her in good condition, and the charterer agreed to furnish her with a full cargo of cotton at Charleston and to pay a certain freight on delivery of the cotton in Liverpool; the vessel was to be consigned to the charterer's friends in Charleston, and to their agents in Liverpool; and what money the master might require for the ship's disbursements in Charleston was to be advanced to him, and paid by his bill of exchange on the freight. The vessel was laden at Charleston, and the master drew a bill accordingly on the said agents at Liverpool, and by letter requested them to accept the same and to insure the amount on account of the owners of the vessel.   The vessel on her arrival at Liver-

pool was committed to said agents, and they paid the disbursements, delivered a portion of the cargo and collected part of the freight, and then became bankrupt. The master collected the rest of the freight himself, and paid the bill of exchange which he had drawn on them. *Held,* that drawing the bill on the consignees at Liverpool did not make them the master's agents to collect freight; that he had a lien on the freight for the charter money, and was entitled to retain from the amount collected by him the whole of the charter money, after deducting the ship's disbursements at Liverpool.

ACTION OF CONTRACT by the administrator of Claudius Dord against the master and partowner of the Ship Medallion, for money had and received to the plaintiff's use, under a charter party executed on the 26th of October 1852, whereby the defendant lets the Medallion to Dord for a voyage from New York to Charleston, S. C., and thence to Liverpool, and " doth engage that the vessel in and during the said voyage shall be kept tight, stanch, well fitted, tackled and provided with every requisite, and with men and provisions necessary for such a voyage ; " and Dord " doth engage to provide and furnish the said vessel with a full cargo of lawful merchandise (or sufficient for ballast) during the voyage aforesaid, with a full and complete cargo of cotton ; " and to pay to the defendant or his agent, " for the charter or freight of said vessel during the voyage aforesaid, three eighths of one penny sterling per pound for cotton bales, with five per cent. primage, payable on delivery of the cargo in Liverpool ; " and it is agreed " that what money the master may require for ship's disbursements in Charleston will be advanced, taking his bill on the freight, subject to the usual charges on the same ; " " that this charter shall commence when the vessel is ready to receive cargo at her place of loading, and notice thereof is given to said Dord or his agent "; and " that the ship will go consigned to charterer's friends, Messrs. Stewart, Harper & Co. of Charleston, and to their agents at Liverpool, free of commissions and brokerage on freight at Charleston ; also to be free of wharfage and dock dues." Trial before *Bigelow,* J., who made the following report thereof :

" It appeared that the defendant proceeded with the ship to Charleston, where Stewart, Harper & Co. caused her to be laden with a full cargo of cotton, for which the defendant signed bills of lading at four eighths of a penny per pound ; that the plain-

Welch, Administrator, *v.* McClintock.

tiff's friends, Stewart, Harper & Co., at Charleston, agreeably to the charter party, designated Collman & Stolterfoht, of Liverpool, as the persons to whom the ship should be consigned; and wrote and forwarded to them a letter, (a copy of which is in the margin,*) and wrote another letter (also copied in the margin †) to Hopley & Co. of Charleston, (who were shippers of a large part of the cargo, and correspondents of Collman & Stolterfoht,) which was transmitted to Collman & Stolterfoht by Hopley & Co., with a request that they would conform to it and advise them of the settlement.

" The defendant introduced the deposition of Heman Stolterfoht, of the firm of Collman & Stolterfoht, who testified that the instructions which said firm received as to the disposition of the freight of the Medallion were contained in said letters, and

---

\* Charleston, 1st December 1852.

Messrs Collmann & Stolterfoht, Liverpool.

Gentlemen, We chartered the Ship Medallion to sail from this port to Liverpool with a cargo of cotton, at three eighths of one penny per lb., and five per cent. primage on said rate, payable on delivery of said cargo in good order at the port of Liverpool.

The ship is not to be bound for more, for collecting said freight, according to our understanding, than if the captain had signed bills lading for only the rate mentioned in the charter party.     Yours truly,

Stewart, Harper & Co.

P. S. There are thirty one bales in the cabin and sails-room, on which the captain is to receive full freights, say one half penny per lb.

† Charleston, 3d December 1852.

Messrs. G. A. Hopley & Co., Charleston.

Gentlemen, We herewith enclose charter party of the Ship Medallion, which please forward to the consignees in Liverpool, Messrs Collmann & Stolterfoht, with instructions to pay the amount of freight, as per charter party, to whoever may be legally authorized to receive the same on the part of the owners of said ship, and to reserve whatever amount over and above this sum, which is due by bills lading of her present cargo, and subject to your orders.

Capt. McClintock has this day valued on Messrs. Collmann & Stolterfoht in our favor, for £364 8s. 1d. against freight earned by the ship under the charter party; which please advise them to honor.     Yours truly,

Stewart, Harper & Co.

that they had no other instructions whatever; and the defendant drew a bill on them for £364 8*s.* 1*d.*, directed to be charged 'to account of freight of ship Medallion,' which he requested them by letter to honor and to insure the amount for account of the owners, and which was accepted by them, but never paid, and was afterwards taken up by the defendant.

" The defendant introduced evidence tending to prove that by the custom of Liverpool the consignees of a ship are to collect the freight. The witness who so testified, in answer to a question by the plaintiff, said he did not mean to say that there is a custom to prevent a master from collecting his freight from the consignee of the cargo before he delivers his cargo, or as it passes over his vessel's side, even if he is consigned to a mercantile house there, if bills of lading have been signed as referred to.

" On the ship's arriving at Liverpool, she was placed in the hands of Collman & Stolterfoht, who paid the disbursements of the ship, and delivered her cargo, except nine hundred and ninety four bales, which were not claimed by the consignees thereof; and received a portion of the freight therefor, at the rate mentioned in the bill of lading, and then became bankrupt. The defendant thereupon interfered to prevent the uncollected portion of the freight from going into their hands, and collected it himself, including the freight on the nine hundred and ninety four bales; and this action was brought to recover from him one quarter of what he so received, as belonging to the plaintiff.

" The defendant drew up an account, wherein he charged the plaintiff with full freight as per charter party, three eighths of a penny per pound on the whole cargo, viz: that delivered by Collman & Stolterfoht and by himself, deducting the disbursements paid by Collman & Stolterfoht; and claimed to retain out of the money received by him as aforesaid enough to make up his entire freight by charter party.

" It was in contest between the parties whether Collman & Stolterfoht had been constituted agents both of the owners and of the charterers to receive the whole freight of the cargo, as per bills of lading, and to hold three quarters thereof to the credit

of the said owners, and one quarter thereof to the credit of the charterers; the plaintiff contending that they were agents of both; and the defendant contending that they were not his agents to collect his freight as per charter party. The case was submitted to a jury on this question, who found for the defendant.

" The plaintiff further contended that, at all events, the defendant, by drawing the said bill of exchange on Coleman & Stolterfoht, which they accepted, and sending the letter annexed, had given to them the right to collect freight as his agents to that amount, and therefore that he was entitled to recover of the defendant a larger amount than the sum for which the defendant offered to be defaulted. But the judge reserved this question for the consideration of the whole court. If the whole court should be of opinion that the ground contended for by the plaintiff should be sustained, then judgment would be rendered for such sum in addition to the verdict as the court should direct, with costs for the plaintiff; and otherwise, judgment on the verdict for the amount only for which the defendant had offered to be defaulted, without costs, and costs for the defendant after the offer to be defaulted."

*C. A. Welch, pro se.*

*J. C. Dodge,* for the defendant.

SHAW, C. J.    The defendant, as master, had the right by the general maritime law to receive the whole of the freight at Liverpool, as by the bills of lading which he had signed. But for the money which he would thus have received he would be accountable to the charterers; he was their agent to sign bills of lading and receive freight on delivery. Collman & Stolterfoht were the agents of the charterers at Liverpool, to receive all moneys collected for them by the master. Had he collected the whole of the money, he would have been accountable to those agents for the charter money, that is to say, by himself holding for the owners of the ship three fourths of the amounts received under the bills of lading, and paying over the balance to the said agents of the charterers. The master would, in his capacity of partowner and agent of the other owners, have had

a lien on this freight money for his charter money.  Thus the whole account would have been settled.

But the master would have had a lien only, which he would not be bound as agent of the charterers to enforce, for in effect it would have been enforcing it against themselves.  If they had chosen to permit their agents Collman & Stolterfoht at Liverpool to collect the whole freight of the shippers, and the master had consented to it, the charterers would still have been liable on their express contract for the charter money, whether Collman & Stolterfoht paid it over to their principals, the charterers, or not.  Had there been no bankruptcy till the freight was all collected, this might have been the result.

The money due from the shippers, being the money of the charterers and being collected by their agents, whether those agents paid it to them or not, the charterers are liable to the shipowners for the charter money.  If the agents failed with the charterers' money in hand, it must be the loss of their principal.  All which did receive, they received in that capacity.  But they could only receive by permission of Captain McClintock; and when they became bankrupt, it was for the benefit of all concerned that they should receive no more; and therefore Captain McClintock rightfully interfered, according to his right and power as master, for the benefit of all concerned.

Had he received the whole of the freight due from the shippers, he would have had a lien on the whole for the charter money due the owners.  The whole being subject to such lien, every part was so.  If, after he withdrew the authority, he received freight of shippers, his lien for the whole of the charter money attached to the portion of the freight received; and if it was sufficient to pay the charter money, he had a right so to appropriate it.

Does the drawing of the bill in Charleston make any difference ?  By the charter party, the owners were to victual, man and navigate the ship at their own expense.  They must therefore pay all disbursements at Charleston.  But there was a stipulation in the charter party, that the charterers or their agents should advance all the necessary disbursements at Charleston,

taking a bill payable from the freight (charter money) at Liverpool. But the charter money would be paid on account of the ship; and if the ship should not arrive at all, then it would not be due at all, and then the advance must be repaid.

The disbursements were made by Stewart, Harper & Co., the charterers' agents at Charleston, and according to agreement they took Captain McClintock's bill on their own agents for their reimbursement, payable in Liverpool out of the charter money, which would be due him on arrival of the vessel and delivery of the goods. Had the vessel never arrived, Captain McClintock would have been obliged to pay the bill, being the amount of the disbursements, and therefore that amount was at the risk of the owners, was insured for their benefit, and they paid the premium. But if the ship should arrive and deliver the cargo, the charter money would be due to the charterers; and whether the freight due from shippers was received by the agents or by the master, this would be a fund out of which the bill would be paid. If the master received it, he must pay the bill, and it is said that he did.

Stewart, Harper & Co. had their remedy as holders of the bill accepted, either by proving it against Collman & Stolterfoht or, as they did, claiming it of the drawer; and then their remedy for their part of the freight received by Collman & Stolterfoht would be by charging it as money had and received in account, and proving it against their estate if the balance was in favor of Stewart, Harper & Co.

This result is not varied in our opinion by the stipulation in the charter party, that the vessel is to go consigned to the charterers' friends Stewart Harper & Co. in Charleston and to their agents in Liverpool. This does not in any manner make Collman & Stolterfoht agents of the owners, for all purposes or for the purpose of collecting shippers' freight. The effect would be that, as such consignees, whatever sums they disbursed for the owners, the owners would be liable to them for. But it did not alter the relation of the master to the charterers, by which he was authorized to collect all the freight of the shippers, being accountable to the charterers' agents for it, first deducting his charter.

**19 \***

As to the custom in Liverpool, we do not understand that it goes further than this: that when the consignees of the vessel are persons in good credit, the freight bills are placed in their hands for collection by the master; but we do not understand that any custom prevails there contrary to the common rule of maritime law, that when the money is due on bills of lading, whoever is owner, either absolutely or for the particular voyage, it is the right of the master in the first instance to collect them, and optional with him whether or not to authorize the person to whom the vessel is consigned to collect them.

The court are therefore of opinion that the plaintiff has no right to recover, beyond the amount for which the defendants offered to be defaulted, and that judgment be entered on the verdict, with costs for the plaintiff to the time of such offer, and for the defendant since.